■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HARRY McFARLANE, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Egitto, J.), rendered March 1, 1989, convicting him of manslaughter in the first degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant was convicted of manslaughter in the first degree for causing the death of Beverly Vance. She was doused with liquid lye as she slept early one morning and died 12 days later of her injuries. The sole contention raised by the defendant on appeal is that the court erred in admitting into evidence as "excited utterances" Vance's statements that he was the culprit. We find that the court's ruling was proper.

The "excited utterance" exception to the hearsay rule is based on "the assumption that a person under the influence of the excitement precipitated by an external startling event will lack the reflective capacity essential for fabrication and, accordingly, any utterance he makes will be spontaneous and trustworthy" *(People v Edwards,* 47 NY2d 493, 497). Whether a statement is admissible under this exception is a determination to be made in the first instance by the trial court after consideration of all the circumstances, including the physical, psychological, and emotional condition of the declarant *(see, People v Brown,* 70 NY2d 513). "In making that determination, the court must ascertain whether, at the time the utterance was made, the declarant was under the stress of excitement caused by an external event sufficient to still his reflective faculties, thereby preventing opportunity for deliberation which might lead the declarant to be untruthful. The court must assess not only the nature of the startling event and amount of time which has elapsed between the occurrence and the statement, but also the activities of the declarant in the interim to ascertain if there was significant opportunity to deviate from the truth. Above all, the decisive factor is whether the surrounding circumstances reasonably justify the conclusion that the remarks were not made under the impetus of studied reflection" *(People v Edwards, supra,* 47 NY2d, at 497).

At a hearing to determine the admissibility of Vance's statements, her uncle Clifton Greene, testified that he was awakened in his apartment that morning by a woman's

screams and went downstairs to investigate. Within a few minutes, he was in the building foyer and noticed that Vance's apartment door was open. He went inside and saw the defendant with his arms around Vance, who was in a "terrible" condition. Her eyes were swollen to the size of golf balls, and her face was swollen to twice its normal size. Holes appeared in her skin, and he could see through to the bone in some places. Greene asked Vance what happened but she did not respond. The defendant told him that someone rang her doorbell and, when she answered, threw a pot of liquid over her. The defendant indicated that he would take Vance to the hospital but then got into the car and drove away. Greene told Vance that the defendant was gone and again asked her what happened. Vance told him that "Harry (the defendant) did it". She said he splashed her with liquid as she was about to fall asleep and that he threatened to do further harm to her if she told anyone. Greene testified that Vance was "wrenching in pain" and that he could see new holes forming in her skin. Vance told him that she was going to die. Before the ambulance took her to the hospital, the police arrived, and Vance repeated her statements about the defendant.

Myrtle Whitmore, Vance's aunt who also lived in the same building, testified that she spoke to Vance as they waited in the lobby for the ambulance. Vance was crying and screaming, and her face was bloated "just like something out of a horror movie". She asked Vance what happened, and Vance said "look what Harry did to me". When she asked why the defendant did this, Vance said "if he couldn't have me nobody else would". Vance said that something was thrown in her face as she slept and, when she woke up, the defendant chased her around the room and kept "throwing stuff" at her. Vance kept saying that she was going to die. Whitmore said that Vance was "screaming and screaming" when she was asked questions, and she thought Vance was in a great deal of pain.

We find that the record establishes that Vance's statements were made while she was still under the influence of the event and that her remarks were trustworthy. The event was undeniably horrifying, and her first statements were made shortly after the attack while she waited for the ambulance. Vance appeared to be in extreme pain, the chemical continued to burn her skin, and she believed that she was going to die. The fact that she made the statements in response to questioning is one factor to consider but it is clear that the questioning here did not interrupt the "continuing influence of the stress and excitement generated by the initial event" *(People v*

*Brown,* 70 NY2d 513, 522, *supra; see also, People v Brooks,* 71 NY2d 877). Accordingly, we find no error in the trial court's determination that Vance's statements were admissible as "excited utterances". Balletta, J. P., O'Brien, Copertino and Pizzuto, JJ., concur.